[Cite as *Faulkner v. Cincinnati Civ. Serv. Comm.*, 2020-Ohio-6711.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| MICHELLE FAULKNER, | : | APPEAL NO. C-200010 |
| | | TRIAL NO. A-1804374 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| CITY OF CINCINNATI CIVIL SERVICE COMMISSION, | : | |
| Defendant-Appellee. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  December 16, 2020

*Freking, Myers & Reul, LLC*, and *Jeffrey M. Silverstein*, for Plaintiff-Appellant,

*Andrew Garth*, Interim City Solicitor, *Paula Boggs Muething*, Senior Assistant City Solicitor, for Defendant-Appellee.

**ZAYAS, Judge.**

{¶1} Plaintiff-appellant Michelle Faulkner appeals the judgment of the Hamilton County Court of Common Pleas affirming the City of Cincinnati Civil Service Commission's determination that Faulkner's job is properly classified as an Administrative Technician. For the following reasons, we affirm.

## I. Background and Procedural History

{¶2} On April 15, 2015, Faulkner, a civilian employee with the Cincinnati Police Department, requested a classification study of her job duties. Faulkner believed she was working above her classification as an Administrative Technician because she was performing increased responsibilities due to departmental vacancies. Her request stated that "an accurate assessment of [her] duties would have properly classified [her] as an Administrative Specialist."

{¶3} Darrell Ludlow, a human resources analyst for the city of Cincinnati, handled the classification study by conducting an audit of Faulkner's job duties on May 26, 2015, and collecting information from Faulkner's superior, Sergeant Jamal Smith, in October of 2015. Ludlow left the department in November of 2015 without completing the study. The study remained incomplete despite several inquiries from Faulkner. Due to interdepartmental changes, in December 2015 Faulkner's assigned work responsibilities were modified.

{¶4} On April 12, 2017, Faulkner requested another classification study. A division manager for the Cincinnati Police Department completed this second classification study on May 25, 2017. The 2017 study's conclusion was that "the review of Ms. Faulkner's job duties illustrates that her scope of responsibilities,

difficulty, and complexity of functions does not rise to the level of an Administrative Specialist."

{¶5} In early 2017, human resources analyst Amy Luthanen took over the 2015 classification study, the one initiated by Ludlow. This study was completed on June 23, 2017, using the information Ludlow gathered from April to October of 2015. The study's conclusion was that Faulkner's position "was correctly classified in 2015 as that of an Administrative Technician."

{¶6} Faulkner appealed the results of both classification studies to the Civil Service Commission ("Commission"). The Commission conducted evidentiary hearings over three days. The Commission determined that the testimonial and documentary evidence from the 2015 classification study "confirm[ed] that the department relied heavily upon [] Faulkner's program knowledge and experience, allowing her to perform independent work duties at a level similar to that of an Administrative Specialist." The Commission therefore rejected the 2015 study's conclusion that the work Faulkner performed was within the Administrative Technician classification. The Commission stated that "[h]ad there been a timely conclusion to the request submitted by [] Faulkner in 2015, there may have been a corresponding reclassification or a reassignment of duties at the time to ensure her proper classification and corresponding job duties."

{¶7} Additionally, the Commission determined that since December of 2015 Faulkner was not assigned and did not perform "any work responsibilities that are significantly outside the realm of the responsibilities of an Administrative Technician." This conclusion was based upon the testimony of Sergeant Smith, Faulkner, and Lieutenant Steven Saunders. The Commission relied on the fact that Saunders had been assigned to lead Faulkner's departmental unit in late 2015 and

reorganized the unit and its programs, removing nonconforming duties from Faulkner's position.

{¶8} The Commission found that the evidence from the 2017 classification study confirmed that Faulkner had not taken on responsibilities outside of her classification as an Administrative Technician. Accordingly, the Commission confirmed and approved the conclusions of the 2017 classification study.

{¶9} Faulkner appealed the Commission's findings to the Hamilton County Court of Common Pleas pursuant to R.C. 2506.04. She argued that as of April 2015, she was entitled to be classified as an Administrative Specialist "with the salary, benefit and rights attendant to that position."

{¶10} Oral arguments took place before a magistrate on June 5, 2019. The magistrate affirmed the decision of the Commission. Faulkner filed objections to the magistrate's decision, which were overruled by the trial court.

{¶11} Faulkner now appeals, asserting one assignment of error.

## II. Analysis

### Standard of Review

{¶12} Trial courts and the courts of appeals review administrative appeals under differing standards of review. R.C. 2506.04; *Groppe v. Cincinnati*, 1st Dist. Hamilton No. C-050385, 2005-Ohio-6390, ¶ 4. The trial court is required to weigh the evidence in the record and to determine whether the order or decision at issue is "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." *Id.* The trial court has the power to reverse, vacate, modify, or remand the case. *See* R.C. 2506.04; *State ex rel. Chagrin Falls v. Geauga Cty. Bd. of Commrs.*, 96 Ohio St.3d 400, 403, 775 N.E.2d 512 (2002).

4

{¶13} "The standard of review for courts of appeals, however, is limited to questions of law and 'does not include the same extensive power to weigh the preponderance of substantial, reliable and probative evidence' as is granted to the common pleas court." *Groppe* at ¶ 4, quoting *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 147, 735 N.E.2d 433 (2000). "With respect to the weight of the evidence, this court is limited to determining only whether the common pleas court abused its discretion." *Id.*, citing *Henley* at 148. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

### Discussion

{¶14} In her sole assignment of error, Faulkner argues that the trial court erred in affirming the Commission's classification decision.

{¶15} Faulkner argues that the 2015 study was both inadequate and untimely and that she is entitled to prevail under *Groppe v. Cincinnati*, 1st Dist. Hamilton No. C-050385, 2005-Ohio-6390. In *Groppe*, we affirmed the trial court's decision to remand a Commission decision, in part, because a city staff member investigating an employee's request for reclassification from an Administrative Technician to an Administrative Specialist failed to compare the specifications for the positions. *See Groppe* at ¶ 6. The trial court determined that without a classification study comparing duties of the two positions, many of which overlapped, the record was underdeveloped, and the Commission had failed to properly investigate the employee's claim.

{¶16} Faulkner asserts that like in *Groppe,* the Commission failed to determine the extent to which her responsibilities fell under the Administrative Specialist classification because, after Luthanen matched the 2015 job duties with the

5

Technician classification, she did not look at the specifications for any other classifications. However, the Commission rejected the 2015 classification study and did not consider the 2015 study's conclusion in its determination. Additionally, the Commission did not base its decision regarding Faulkner's 2017 classification study on the 2015 study's conclusion, but rather on the evidence submitted pursuant to the 2017 study. Thus, Faulkner's arguments relating to how the 2015 classification study was conducted are irrelevant.

{¶17} Additionally, Faulkner asserts that she is entitled to relief because "[t]he trial court failed to analyze the relevant time period for [her] request for reclassification," which she argues is 2015. However, the Commission properly considered the fact that in December 2015 Faulkner's duties changed, and independently reviewed her 2017 duties.

{¶18} Faulkner further argues that the Commission's finding that she "perform[ed] independent work duties at a level similar to that of an Administrative Specialist" for a period in 2015 "entitled" her to "a reclassification audit that qualified the extent to which her 2015 responsibilities merited Specialist credit," and that the trial court erred in affirming the Commission's decision that she was not entitled to this relief. To the extent that Faulkner is arguing that she deserves a credit for the time period in which she performed Specialist duties, the Civil Service Rules do not explicitly provide for such a credit.

{¶19} The Civil Service Rules do not provide for "de-facto" classification. Rather, the rules specify that reclassification is a formal procedure. *See* Civil Service Rule 4, Section 6 ("The Commission staff shall, after investigation and review of job duties, work samples and/or any other appropriate documents or evidence, allocate or reallocate every position to the appropriate class); Civil Service Rule 4, Section 3 ("When a substantial change of duties outside the current classification is made,

except for a temporary period or by the addition of duties that are incidental to the main employment, such change shall be reported to the Commission within 60 days with a view to a possible reclassification of the position."); Civil Service Rule 4, Section 6 ("When a position is reclassified to a higher or different classification, several resolutions are available.").

{¶20} Significantly, Civil Service Rule 4, Section 6, does not contemplate an automatic reclassification where an employee is in fact performing duties above his or her current classification. Rather, even if the Commission had timely approved a higher classification, the Cincinnati Police Department had the option to fill the position at the classification approved by Commission or remove Faulkner from the "higher level and/or nonconforming duties" and ensure that Faulkner was assigned to duties within her classification. *See* Civil Service Rule 4, Section 6.

{¶21} Faulkner further argues that the Cincinnati Police Department cannot rely on its own negligence in the delayed conclusion of the 2015 classification study to justify Faulkner's improper classification. Faulkner asserts that because the study was not conducted in a timely manner, there was no reclassification or reduction in duties in 2015, nor was Faulkner compensated for the level of work she was performing. However, based on our limited standard of review, the record of this case, and the text of the Civil Service Rules, we are unable to fashion a remedy that compensates Faulkner for any time period she performed Administrative Specialist duties. As discussed above, Civil Service Rule 4, Section 6, does not contemplate an automatic reclassification where an employee is performing duties above his or her current classification. Rather, the Civil Service Rules provide individual departments with the option to fill the position at the classification approved by the Commission or remove the nonconforming duties. We note that in this case, the nonconforming duties were removed in December 2015.

7

**{¶22}** Accordingly, the Commission's approval of the Cincinnati Police Department's determination that the job duties Faulkner performed did not rise to the level of Administrative Specialist is supported by the record. Nonconforming duties identified in the 2015 classification study were removed from Faulkner's position in December of 2015 and she was not performing nonconforming duties under the 2017 classification study. Under our limited standard of review, we find no abuse of discretion in the trial court's judgment affirming the decision of the Commission.

### III. Conclusion

**{¶23}** We therefore overrule Faulkner's sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**MOCK, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.